566 A.2d 131

**Gardnel Allen CARTER**

v.

**STATE of Maryland.**

**No. 245, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Nov. 30, 1989.

Michael J. Moran, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Audrey A. Creighton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Submitted before GARRITY, ALPERT and BLOOM, JJ.

BLOOM, Judge.

Gardnel Allen Carter, the appellant, was convicted by a jury in the Circuit Court for Harford County of attempted second degree murder, robbery with a dangerous and deadly weapon, battery, carrying a weapon with the intent to injure, and theft of less than $300.00. Following the imposition of sentences, appellant filed this appeal, raising the following issues:

1. Whether the trial court erred in denying the motion to suppress the State's identification evidence.
2. Whether the trial court erred in denying the motion for mistrial.
3. Whether the trial court erred in admitting impeachment evidence.

Upon examination of the record, we conclude that the trial court committed no reversible error.

The facts of this case may be briefly summarized. On 13 June 1987, William Moses went to the American Legion Hall bar in Bel Air with some friends. His friends later decided to leave the bar and go home, but Moses wanted to go to the Veterans of Foreign Wars (VFW) post in Perryman. Moses asked appellant, whom he had seen at the bar on previous occasions, for a ride to the VFW post in appellant's van. Appellant agreed. He drove the van, with Moses sitting next to him in the front seat, during the thirty or forty minute trip to the VFW. Two of appellant's friends rode in the rear of the van. Upon arrival at the VFW post, Moses was admitted but appellant and his two friends were denied entrance because of their improper attire. They called out to Moses, who then left the VFW and walked back to the van. He was pushed inside the van, beaten by appellant with a baseball bat, and robbed of his wallet, money, watch, and shoes.

At a preliminary hearing in April, 1988, and at a courtroom lineup in October, 1988, Moses identified appellant as his assailant.

## 1. *Motion to Suppress*

■ Appellant's first contention is that the trial judge[1] erred in denying his motion to suppress his identifications at the preliminary hearing and at the pre-trial courtroom lineup. He contends that the identifications were tainted by an improperly suggestive procedure at the preliminary hearing. He asserts that he was denied due process because the suggestive procedure created a substantial likelihood of irreparable misidentification.

An identification of a defendant, whether it is judicial or extrajudicial, must comport with due process. *Manson v. Brathwaite*, 432 U.S. 98, 113, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 196, 93 S.Ct. 375, 380, 34 L.Ed.2d 401 (1972); *Webster v. State*, 299 Md. 581, 599–600, 474 A.2d 1305 (1984). Due process requires that an identification procedure may not be impermissibly suggestive. *Evans v. State*, 304 Md. 487, 498, 499 A.2d 1261 (1985).

At the suppression hearing, appellant testified that Detective Lillian Taylor greeted him by name in the hallway prior to a preliminary hearing. He said that the victim, Moses, did not appear to recognize him until Detective Taylor addressed him by name. He contends that Moses was able to identify him solely because of Detective Taylor's suggestive influence. As support for this contention, appellant points out that Moses failed to identify him from photographic arrays which he saw on two occasions prior to the hearing.

The suppression hearing testimony of Moses and Detective Taylor contradicted appellant. They both said that Taylor did not speak appellant's name when she greeted him. Moses further testified that he was unable to identify appellant from photographs because his vision was somewhat impaired as a result of the beating. He said he told

---

1. The Honorable Stephen M. Waldron presided at the suppression hearing. The Honorable Cypert O. Whitfill presided at trial.

the police that he believed he could, however, identify his assailant if he saw him in person.

The trial judge ruled that appellant failed to make a *prima facie* showing that the identification procedure at the hearing was suggestive. He denied the motion to suppress the identifications made at the hearing and the courtroom lineup.

It is the trial judge who determines the credibility of witnesses when, as in a suppression hearing, he functions as the trier of fact. *See Parker v. State*, 66 Md.App. 1, 10, 502 A.2d 510 *cert. denied*, 306 Md. 70, 507 A.2d 184 (1986). In the case at bar, the trial judge obviously found the State's witnesses more credible than appellant. We discern no error in his finding that the identifications did not result from any improperly suggestive procedure. The identifications were therefore properly admitted into evidence.

### 2. *Motion for Mistrial*

■ Appellant's second contention is that the trial judge erred in denying his motion for a mistrial. He contends that his right to a fair trial was prejudiced when a police officer improperly alluded to appellant's arrest in another jurisdiction. He further contends that the curative instruction given by the judge did not remedy the prejudicial effect of the officer's remark.

The decision whether to grant or deny a mistrial rests in the sound discretion of the trial judge. *Tibbs v. State*, 72 Md.App. 239, 253, 528 A.2d 510 *cert. denied*, 311 Md. 286, 533 A.2d 1308 (1987). A mistrial should be declared only under extraordinary circumstances and where there is manifest necessity to do so. *Id.* The standard of review from a denial of a motion for mistrial is whether there was an abuse of discretion. *Russell v. State*, 69 Md.App. 554, 562, 518 A.2d 1081 (1987). The decision of the trial judge will not be reversed on appeal unless there has been clear prejudice to the defendant. *Id.*

At the trial in the case *sub judice*, the prosecuting attorney asked Deputy Paul Cole how he had assembled the

photographic array shown to Moses. The prosecutor said, "Why would you have those particular six photographs?"[2] Cole replied, "What I had done is I found out that [the appellant] had been arrested in Baltimore City."

Defense counsel objected that the reference to the defendant's arrest in another jurisdiction was prejudicial and he moved for a mistrial. The trial judge denied the motion and gave the following curative instruction:

> Mr. Foreman, ladies and gentlemen of the jury, the officer said the Defendant had been arrested in Baltimore City. Now, whether or not a person had an arrest is not in any way relevant to the issue of guilt or innocence in a case. So that I am not telling you you didn't hear it, but I am telling you you are not to consider that when it comes time to consider the issues of this case.

> You are not in any way to consider that as reflecting upon guilt or innocence, so if it comes up in any way, I am telling you it would be improper. It would be a violation of his rights for you to consider that in any way on the merits of this case.

When curative instructions are given, it is generally presumed that the jury can and will follow them. *Brooks v. State,* 68 Md.App. 604, 613, 515 A.2d 225 (1986), *cert. denied,* 308 Md. 382, 519 A.2d 1283 (1987). Furthermore, the trial judge is in the best position to determine whether his instruction achieved the desired curative effect on the jury. *Myers v. State,* 58 Md.App. 211, 228–29, 472 A.2d 1027, *cert. denied,* 300 Md. 484, 479 A.2d 373 (1984).

Cole's reference to appellant's prior arrest was not elicited by the State and the State did not refer to it during the remainder of the trial or in closing argument. The trial judge instructed the jury to disregard the remark immediately after it was made, and we must presume the jury

---

**2.** At a bench conference, the prosecutor stated the response he sought to elicit from Deputy Cole was that the photographs were selected on the basis of similarity of physical appearance.

followed that instruction. Consequently, we are not persuaded that there was manifest necessity for a mistrial.

### 3. *Impeachment by Prior Conviction*

Appellant's third contention is that the trial judge erred in admitting, for impeachment purposes, evidence of appellant's 1983 conviction for manufacturing a controlled dangerous substance. He contends that this crime is not relevant to his propensity for truthfulness. Alternatively, he contends that, even if the conviction is relevant to his veracity, its prejudicial effect outweighs the probative value.

Subject to certain exceptions, the fact that a witness (including a defendant in a criminal prosecution, if he chooses to testify) has been convicted of a crime may be admissible to impeach his credibility. The rationale is that a person who has engaged in criminal activity involving some element of dishonesty or significant lack of moral commitment may have a lesser propensity to tell the truth than one who has not engaged in such activity. *Burrell v. State*, 42 Md.App. 130, 135, 399 A.2d 1354 (1979). Infamous crimes, which include treason, the common law felonies, and *crimen falsi* crimes involving dishonesty or fraud, are *per se* admissible under Md.Ct. & Jud.Proc.Code Ann., § 10–905. *Prout v. State*, 311 Md. 348, 360, 535 A.2d 445 (1988). Non-infamous misdemeanors and statutory felonies fall into the class of lesser crimes which may or may not reflect on an individual's tendency to be truthful. Whether or not such convictions may be admitted is left to the sound discretion of the trial judge. *Id.*, at 363, 535 A.2d 445. In determining whether a prior conviction is relevant to the issue of the witness's credibility, the trial judge must consider two factors: the nature of the crime and the length of time since the conviction. *Duckett v. State*, 61 Md.App. 151, 156, 485 A.2d 691 (1985), *aff'd*, *State v. Duckett*, 306 Md. 503, 510 A.2d 253 (1986); *Paschall v. State*, 71 Md.App. 234, 243–44, 524 A.2d 1239 (1987). If the prior conviction passes the relevancy test, then the trial court must deter-

mine if its probative value outweighs its prejudicial effect. *Prout v. State*, 311 Md. at 363, 535 A.2d 445. The trial judge's decision is presumed to be correct and will not be reversed except in a clear case of abuse. *Id.*, at 363–64, 535 A.2d 445.

■ In the present case, the trial judge admitted evidence of appellant's conviction for drug manufacturing as a non-infamous crime relevant to the issue of appellant's credibility. He found that the probative value of the conviction outweighed its prejudicial effect. The judge said:

> [T]he manufacturing of CDS conviction has no connection to the current offense, so it's not prejudicial the way other convictions would be ... I think manufacturing comes into the class or category where it does show or is relevant to the issue of truthfulness. The manufacturing is a scheme. It's thought out. It's not a spur of the moment, and it has as its purpose gain that's outside the law, and that, certainly to me, is an issue that relates to the issue of honesty, so my ruling will be that it's within the court's discretion to allow or disallow questioning on that particular offense ... I feel that there is sufficient probative value, and that the prejudice is not so great as to disallow it.

We concur with the trial judge's finding that appellant's prior conviction for manufacturing drugs is relevant to the issue of his credibility. This particular crime necessarily requires several steps involving premeditation and conscious violation of the law—acquisition of the raw materials for making drugs, processing the materials, and finding a means of distributing the drugs. Furthermore, all of these acts must be carried out surreptitiously to avoid detection and arrest. We contrast such a premeditated, secretive crime with crimes of sudden passion, such as assault and battery involving spontaneous acts of violence. Crimes of violence have been held to have little relevance to the issue of a witness's veracity because they may result from causes such as a short temper, combative nature, or extreme provocation, having little or no direct bearing on honesty.

*See, State v. Duckett, supra,* 306 Md. at 511–12, 510 A.2d 253. We believe that drug manufacturing, on the other hand, is relevant to the issue of appellant's propensity to tell the truth. A person who has committed crimes that posed grave danger to the fabric of society, that only could have been carried on furtively, and that required him to take great pains to conceal his conduct, would probably not be adverse to concealing the truth if it is to his advantage to do so.

Furthermore, we do not believe the five-year period of time between appellant's conviction and the trial in this case was so long a time as to vitiate the probative value of the conviction. *See Duckett, supra,* 61 Md.App. at 156, 485 A.2d 691.

Having determined that the crime of drug manufacturing is relevant to the issue of credibility and that the date of the conviction was sufficiently recent to have probative value, we now consider whether that probative value outweighed the prejudicial effect. The conviction for drug manufacturing is not similar to the crimes the appellant was charged with in the instant case; therefore, this evidence had no tendency to suggest to the jury that appellant was repeating a crime he had committed in the past. *See Prout v. State,* 311 Md. at 364, 535 A.2d 445. Further, we find no merit in appellant's contention that the prejudicial tendency outweighed the probative value because the "war on drugs in our society could have easily influenced the jurors impermissibly." The trial judge instructed the jury to consider appellant's prior drug conviction only in evaluating his credibility. We have no reason to believe they did otherwise. We are unable to conclude that the admission for impeachment purposes of appellant's prior conviction for drug manufacturing was an abuse of discretion.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.